Good morning, everyone. We have decided that Boeing is the appellate for purposes of this argument today. This is the time and place set for argument in Zunum Aero v. The Boeing Company. So, Counsel, could you please proceed? Good morning, and may it please the Court. I'm Don Verrilli for Boeing, and let me say at the outset that we're grateful for the opportunity to be here this morning because we recognize that the Court does not normally hold oral argument on rehearing petitions, so we want to make sure you understand that we thank you for that. The Court has asked us to focus on two questions, whether this Circuit's law or the Federal Circuit's law answers the jurisdictionally dispositive question whether Boeing's patent counterclaim is compulsory under 28 U.S.C. 1295A, and second, whether this Court can transfer the appeal to the Federal Circuit under 28 U.S.C. 1631 if it concludes that our counterclaim is compulsory and, therefore, the Federal Circuit has exclusive jurisdiction. If I could, maybe I'd just summarize quickly our position and then elaborate. First, this Circuit's law applies to the question of what counts as a compulsory counterclaim under 1295, as it does to all questions concerning whether this Court has jurisdiction over an appeal. Second, our patent inventorship counterclaim is definitely compulsory under this Circuit's law because it arises out of the same operative facts that are the subject matter of Zunim's complaint and because the Zunim's complaint activates an otherwise dormant right that Boeing has to establish exclusive inventorship under the Patent Act. And third, we don't think there should be any concern about whether the appeal can be transferred to the Federal Circuit under Section 1631. We think that's true for two reasons. First, that the Federal Circuit would conclude that this is a compulsory counterclaim under its law. But second, and more importantly, and I think dispositively, the Supreme Court's Christensen decision, which I think plays a very important role in how this matter should be resolved, dictates that the Federal Circuit must apply law of the case principles to give dispositive effect to this Court's jurisdictional ruling under 1295A unless the Federal Circuit concludes that this Court's ruling is implausible. And I don't think, given the issues before the Court, that there's any basis to conclude that a finding that this is a compulsory counterclaim would be implausible. So I do think that the law of the case doctrine would resolve any concern over whether the case could be transferred to the Federal Circuit. Can we address the same operative facts? The challenge here is that the District Court granted Boeing's motion for summary judgment on the patent inventorship claims, but then the jury ruled in favor of Zunim on the misappropriation of trade secret claims. So that seems the best evidence that whether you look at any of the tests under either Federal Circuit or Ninth Circuit law, that it's not the same aggregate core of facts, it's not the same operative facts, it's not the same evidence you have to prove for a counterclaim as you have to prove for a claim. Respectfully, I don't think that's right, Your Honor. I understand the point, and it's the argument my friend's on the other side of making, but I think the right way to think about this is that when Zunim brought his complaint, it alleged numerous theories that could, that they claimed could have resulted in a misappropriation, a finding that their trade secrets were misappropriated. One of those theories, and this was adjudicated, one of those theories was that we, that they shared their inventions with us on a confidential basis, that we took that information and patented their inventions ourselves and claimed ourselves to be the inventors. That was, in fact, their primary theory of misappropriation. Now they whether a counterclaim is compulsory, whether at the time of service the pleader has against an opposing party a claim that arises out of the transaction or occurrence, that is the subject matter of the opposing party's claim. But no claim was made at that time. No counterclaim was made at that time, correct? No, we did make a counterclaim at that time. And what was the counterclaim? The counterclaim that we made at that time was under the Patent Act that we were, that they had put inventorship of the patents at issue with their misappropriation claim and that we counterclaimed for a declaratory judgment on our patent. But that wasn't, go ahead, go ahead, but that wasn't the same set of operative facts, was  I think it's exactly the same set of operative facts, Your Honor, respectfully. Let me just point the Court to a few things. First, this is, and I apologize because none of this is in the appendix, of course, because this issue has come up now, but Zunim made a remand motion. They made a remand motion on the ground that our patent counterclaim was untimely. Because you didn't counterclaim based on the complaint. You actually said we didn't get notice based on Zunim's complaint. We only got notice based on their response interrogatory number six. And so Boeing consistently disclaimed that the complaint actually gave Boeing notice of its counterclaim, which you had to do in order to make your counterclaim timely. Respectfully, I don't think that's right in two respects, Your Honor. The first respect is that we said your complaint appears to be alleging that you're the inventor and challenging our patents, but it's not clear. So we served interrogatories for clarity. We got interrogatory responses, which I'll be happy to share with the Court in a moment. But then the second reason is that... I'm sorry. I'm looking at the joint opposition to remand motion. It specifically says the allegation does not convey that the inventorship of the active voltage patent is at issue. Boeing could not have pursued a declaratory judgment claim on the active voltage patent based exclusively on the First Amendment complaint's allegations. But prior to its interrogatory responses, Zunim never claimed it was the correct inventor of the active voltage patent. So I beg to differ on that. But the more important thing is none of the case law says that you look at theories. It all says you look at claims, right? I haven't found either Federal Circuit, Ninth Circuit, Supreme Court cases that says, oh, you look at whether theories have overlapping facts. It all says claim, counterclaim, claim, claims, right? I think fair enough, Your Honor, but only because I don't think this precise issue has ever come up before. But I do think, thinking about this and applying fundamental principles here, the rule itself says that it's a compulsory counterclaim. If it arises out of the transaction or occurrence, that is the subject matter of the complaint. And whatever might have been the case with respect to the ambiguous language in the First Amendment complaint, and I could, as Your Honor quoted some things that we said about it, I can quote you back what Zunim said about it, the First Amendment complaint, which is that Zunim specifically identified two Boeing patents in the First Amendment complaint, giving Boeing notice that the inventorship of one of the identified patents was at issue. Then their interrogatories made absolutely clear that was the case. So the subject matter of the complaint includes their allegation that they are the inventor of the patent and that we are not the inventor of the patent. And so, and that's what Rule 13 tells the court to look to, the subject matter of the complaint. Those are the words of the rule. Now, and I think maybe a couple of other ways of thinking about it that may also help illuminate why I think we're correct about this. So do you not look at interrogatory responses? Do you only look at the allegations in the complaint? I think it would be appropriate to look at both where the interrogatory responses are clarifying what the allegation in the complaint was, and the interrogatory responses could not be clearer that they are challenging inventorship. And I think this is a couple of other ways to think about why this is important. Let's say that they had, as they could have structured their complaint differently, it's like claim one, misappropriation with respect to patent inventorship, claim two, misappropriation theory B, claim three, misappropriation theory C. I don't think anybody would have any doubt that this is a compulsory counterclaim because claim one, separately denominated, would be about the patents. It can't be any different because they lumped them all together in one claim, not all. So if this is a compulsory counterclaim, then if you had not, if Boeing had not asserted it, then are you saying they would be barred from ever? That's the risk. That's precisely the problem here. So you would agree that if they had not asserted it here, they would lose the ability to assert ownership of the patent forever after. That's precisely why we asserted it. It's a very serious risk. If it's a compulsory counterclaim and we don't assert it, then we would be precluded from asserting it later. How do we reconcile that with the district court's discretion to hear the declaratory judgment claim? I mean, what if the district court just said, I'm not going to consider this claim? Would Boeing then still be barred from asserting ownership? If the district court ruled that it wasn't a compulsory counterclaim, then that would be one thing. But the district court did, you know, we made the claim. The district court heard it. It was adjudicated. And I do think that gets to another point. Now, we did prevail on this claim in summary judgment. And this is another point I wanted to make also in response to a question Judge Koh asked earlier, that it is true that we prevail on this claim on summary judgment and Zunim went to trial on other claims. But they went to trial on other claims of different theories that did not involve the patent. They dropped the patent out of the case entirely when they went to trial because they had lost it because it was adjudicated on summary judgment. But then I think in terms of thinking about why this is a case that triggers 1295A, that they chose not to appeal their summary judgment loss on the question of whether they or we invented the patent. But that was their discretionary choice made way after trial. They could have appealed it. Then there would have been, there would have been a patent question before this court on the initial appeal. But they just chose not to. But this is, you know, and this is what I think is an important reason why this court said what it said in Breed, that these issues get determined at the pleading stage. And I do think Breed's language is really quite important and instructive there. This is a case that we've cited in our papers. What Breed says is that the existence of a single claim created by federal patent law triggers federal circuit jurisdiction over the entire case. And it's immaterial, Breed says, that the complaint asserts non-patent claims or that the non-patent claims predominate. So long as there's a patent claim in the case, 1295 is triggered. And there was a patent claim in the case. And we wanted a summary judgment. And the fact that they chose not to appeal it doesn't make it any less true that there was a patent claim in the case. So do we need to distinguish hydronautics to get to your conclusion? They make a big deal about hydronautics, I realize that. This is this very odd mercoid doctrine in which the Supreme Court long ago said that there's an exception to the usual rule of compulsory counterclaims in a patent case for antitrust counterclaims in a situation in which the antitrust claim is that the very act of bringing the patent litigation is an antitrust violation. The court has said in those circumstances the defendant doesn't have to bring that as a compulsory counterclaim. The defendant can wait and bring it later. But that mercoid thing has been confined to its facts. It doesn't apply generally. It doesn't apply to the 1295 question that is before the court now. The question here before the court now is whether the operative facts out of which our patent misuse counterclaim arose were a subject matter of the complaint. And they were. And that's true even though the complaint had other claims that were subject matters of it too. This was a subject matter of a complaint within the plain meaning of rule 13. It's covered. And so I do think that that has to be the analysis. And you know another way of thinking about it I guess is let's say we had lost at summary judgment on this claim and they had gone to trial and they had gotten a verdict that they were the inventor. And then we would have appealed. And we would have said no we're the inventor under the patent laws. And that would go to the federal circuit. And the fact that they lost instead of winning at summary judgment and then chose not to appeal, it doesn't change that. There was an essential issue of patent law in this case raised by a counterclaim that we had to raise under the text of rule 13 and under this court's precedence. And the reason was because as your honor suggested because of the risk that we would have faced of being precluded in the future from being able to assert inventorship had we not raised it and had they prevailed on that issue. So I know I don't think you were representing Boeing before. We came in at the rehearing stage that's right your honor. So why did Boeing never raise this issue before? So I don't know. Here's what I can tell you. And I understand it's regrettable. It's not good for the court that we're in this situation. I completely appreciate that and it's regrettable. What I can tell you is we came in. We saw this. We ran it to ground. We believe that is a strong issue. We believe we're right about it. And we believe that in this situation we should raise it. In fact, I don't want to get on my high horse here because this is a regrettable situation. But we thought we had an obligation to raise it because it's jurisdictional. And so we raised it. And you're right. It would have certainly been better had this been identified earlier. But the mandate hasn't issued. So the court has to satisfy itself of its jurisdiction. And we do think it's appropriate for us to have raised it in the way that we did. All right. Thank you, counsel. You've exceeded your time. We'll give you a minute or two for rebuttal. Thank you. Good morning, counsel. Good morning and may it please the court. Vincent Levy on behalf of Zunim. Your Honor, I think under the question before the court is whether the counterclaim that Boeing brought is compulsory or permissive. Counsel said that it is enough there was a patent issue in the case. Congress made very clear that to implicate the exclusive jurisdiction of the federal circuit, the counterclaim has to be compulsory. The federal circuit explained in the Reardon case that Congress made a decision to do that in order to make sure that litigants wouldn't manipulate the appellate rules of the court to try to get into the federal circuit cases that should probably belong in the regional circuits, even if those implicated and sometimes concerned patent issues. This case, no matter whether the court applies federal circuit or ninth circuit law, the counterclaim is permissive and not compulsory. And I do want to underscore. Counsel, why is it permissive rather than compulsory? Well, none of the tests that this circuit or the federal circuit has announced announced for determining whether a counterclaim is permissive or compulsory or compulsory rather is satisfied. I think Boeing relies on the logical relationship test only. But it's important to look at all the tests because they are of a piece with one another. So, number one, the first test is whether the substantially the same elements and facts are at issue. They are not. The facts underlying our claims for trade secret violations was whether we had information that was secret, novel, and derived value from being secret, and whether they took that information. That's what we had to prove to set a claim. And that's irrespective of the patent ownership. That's correct, Your Honor. And I think the summary judgment ruling and the summary judgment briefing that Boeing put in in advance of that makes very clear why the two claims are distinct here. They had, in order to prevail on their claim, all they had to show really was that they had a patent. And they have to say they invented it. Then we had to defend against that by establishing that we would, that someone on our side invented one of the specific claims that are set forth in the patent. Those are very different issues. The federal circuit made that clear in the Intelsoft case and some of the other cases we cite in our brief. And as a matter of doctrine, we could prevail on our claim and they could prevail on their counterclaim, which is exactly what happened. So the elements and the facts are distinct. The evidence supporting our claim and their counterclaim were distinct. Again, summary judgment proved that. And the logical relationship test is not. But what about your opposing counsel's statement that if you had appealed the summary judgment of inventorship ruling, then that patent claim would have been before the Ninth Circuit? That's true. But that's what the that's what Congress intended because it only intended for compulsory counterclaims to be sent to the federal to the federal circuit. So could there be a split appeal? If you had appealed the summary judgment ruling on patent ownership and then also appealed on the merits in the district court awarding a new trial, could part of it have gone to the Ninth Circuit and part to the federal circuit? Well, I think both issues would have come here. And that happened in the ABS case from the Seventh Circuit, where there was an antitrust case, an antitrust claim on the plaintiff's side and a counterclaim sounding in patent. The Seventh Circuit ruled that the patent counterclaim was permissive and not compulsory, stressed that ruling otherwise would seriously unsettle patent rights and federal policy, and determined that the claim was permissive and went on to address the patent issues on the merits. And the court noted that it was unusual for a regional circuit to address patent claims. But that's what Congress intended here. And Reardon makes clear why that is. So that's what would have happened. I do want to pause on the, or spend a little time on the logical relationship test, which is the test that they're focusing on. I think it's fairly clear that the test is not met in the federal circuit. They don't trial that hard. They rely on the Reardon case, which is, in which the court was very clear that the claims were contingent on one another. And in particular, at pages 1332 to 1333, the court said that the two claims shared a critical factual dispute, that the success on the plaintiff's state law claims will depend on So the logical relationship test in the Ninth Circuit would still require the same aggregate operative facts. So I think that addresses that issue. But under even the federal circuit law, in NASA law, the court said that under any of those three tests, including logical relationship tests, you still have to have overlap in the facts between what has to be proven on a counterclaim and a claim. So my question for you is, under Supreme Court and Ninth Circuit law, Rule 13a standard for transaction occurrence has to be read broadly. How is your position consistent with that? Well, it has to be read broadly, but also consistent. Well, I think I'll start with the way the federal circuit looks at it, which is to take to, in this particular context, where Congress drew a line between permissive and compulsory counterclaim, it does have to be read in line with federal patent law. And the fact that here, if no claim were asserted as to patent inventorship, that the patent would remain valid under federal statute. There was no use-it-or-lose-it consequence, and it's therefore just like hydronautics. So I think our approach is entirely consistent with hydronautics. We are advocating a reading of the test that is entirely consistent with this court's decision in Mattel, this court's decision in hydronautics, and I don't think they can swear their position with either of those tests. The court still must look at the facts, the operative facts, the essential facts. Those are the facts that matter for purposes of applying this test, and that's the way the Supreme Court looked at it. I know they're relying on the theory about the part of the logical relationship test where, in Pegasus, the court said it might be satisfied where the subject matter of a claim activates otherwise dormant rights. So if we trace that doctrine, first of all, in Pegasus it was a dictum because Pegasus actually ruled that the counterclaim was permissive. But if we trace it back to its origin... Can you comment on the language of your own, I guess it was your motion to remand, that says that your First Amendment complaint expressly alleged that the Thinhall patent, the active voltage control patent, were based on information that Zunim disclosed? Right. So I think we have, this was also prior counsel, obviously this is a position that we took, said that the complaint did put at issue, for purposes of the Declaratory Judgment Act, the question of inventorship. That is a different standard than the standard we're dealing with here. The standard for a Declaratory Judgment Act is whether there is a threat of an action, a litigation. What we're talking about here, for purposes of the compulsory counterclaim test, is whether the claim and the counterclaim are based on the same facts, evidence, elements. And really on the logical relationship test, it's whether it's possible or not to prevail on both the claim and the counterclaim. That's really the test under the logical relationship test. And we never said, we never conceded otherwise. And of course, as Judge Koh, as you noted, in their briefing below, they consistently said that the complaint itself did not put the subject, the inventorship, in issue. And they didn't know they had a counterclaim. And the district court bulletin didn't really address the point. And if the court looks to what's pleaded in the actual complaint, what it says is that the fact of these patents being filed by Boeing suggests that in the background, Boeing was working on technology that was animated by- And Zunim never moved for like an interference proceeding before the patent trial and appeal board, right, to try to contest inventorship of those two patents, did you?  Did you do any administrative proceedings before the PTAC? We have never made a claim regarding the patents anywhere in any court or any administrative proceeding, which is why under a federal statute, no matter what would happen to our- Or move for invalidity on inventorship or on any other basis. We have never filed- Obviousness, novelty, whatever. We have never filed any claim sounding in patent in any court or other proceeding. Can I ask you two questions? The first is, for this activation test, do you assert that the activation is from the facts, the underlying facts, or is it from the action of filing a claim? So the claim, the misappropriation claim, that triggers the declaratory judgment claim. Would that be sufficient to meet the activation test? And then my second question is, what do you do with Porchiro, with our decision from 1987 in Porchiro? How do you distinguish that? So in terms of the activation test, I think the way it's framed is that it's the underlying subject matter. That's the way the test is stated. But it is important, I think, to go back to where this test came from, because, again, in Pegasus, it's just a dictum. And so, as I was saying, it traces its route back to Revere Copper and Brass Incorporated case from the Fifth Circuit from 1970. And there, the court made clear that the reason it was finding that the counterclaim was compulsory and that there was a dormant right activated was because the claim and counterclaims were, quote, two sides of the same coin. It said, and this is on page 715 to 716, that so close is the connection between the case sought to be stated in the complaint and that setup in the counterclaim that it only needs the failure of the former to establish the foundation of the latter. So that's the test, and it looks, and that's really just not met here, not even close. So, in other words, you couldn't win one and lose the other? I think that's the upshot, and that's what Revere said. They also cite Crossroad Partners, which is an unpublished decision from before 2000, so it's not citable authority, but there as well, the court said the same thing. There was a claim that was set forth, and the counterclaim was for release on the liability that was asserted. And it was impossible for the plaintiff to win on the contract claim and for the defendant to win on the release. And the same, that's the test. Is it possible to win on both? And it's not met here. Pinkstaff, it's the same thing. That's the other case they cite. So Your Honor also asked about Pachiro. I think it's important to read Pachiro also alongside hydronautics because I don't think it's possible to square what they're saying with hydronautics or with Mattel, frankly. Pachiro and hydronautics both entailed counterclaims for malicious prosecution. I think my friend pointed out that hydronautics, there was a federal policy stating that the claim wouldn't be res judicata, or the counterclaim wouldn't be res judicata. Exactly the same is true here under federal statute. Because there has been no claim for patent invalidity, no claims related to the patent, if no counterclaim were filed, no declaratory judgment were filed, or the district court declined to exercise jurisdiction, their patent rights would remain presumptively valid by statute forevermore. So I think that's the dispositive point. And it's important to pause on the implications of the rule that they are sponsoring here, which is entirely untethered to any of the tests that this court has articulated. They're saying effectively if a defendant scours a response in the interrogatory and there's a statement putting a claim in issue, that triggers an obligation to bring a counterclaim. No matter what the facts that are alleged, no matter what the elements of the claim, that can't be the law. Hydronautics, Mattel, Nostelok, all those cases would have turned out differently. The test for declaratory judgment action is entirely distinct from the test for compulsory counterclaim. And their test would just swallow the rule. And it's not the law. And it would completely unsettle patent rights. It would turn most claims involving intellectual property. It would require people who have patents to just assert patent claims left and right. That's surely not what Congress intended. That's surely not what Rule 13 requires. That's surely not required here. So I'm happy to address other questions. I did want to pause briefly on choice of law, which my friends did not address. I think the question is academic here, but the court did ask. I do think that my friends missed state a number of the cases that they discussed in their brief. Let me ask you, if we were to find that under Ninth Circuit law the counterclaim were compulsory, then how would this three-judge panel be able to overrule any of those precedents to apply Federal Circuit law? I'm sorry. Could you just briefly say that? If we were to find that Ninth Circuit precedents say that the inventorship declaratory judgment counterclaim were compulsory, then this three-judge panel under Miller v. Gamey wouldn't be able to overrule those, would we? Well, I think the way it would work is – I'm not sure that it's particularly probative as to which law applies, Your Honor, and maybe I'm missing the point of your question. But the question is whether – I mean, I guess your point is really on the if, right, whether we find Ninth Circuit law precedent applies here and would find the claim compulsory, the counterclaim compulsory. But if we were to find that, then we would be bound by that. That's really the question. If you were to find that, then you would place the question of whether you should transfer it. I think the way the courts look at it – so we cited – the only case that we found in the Federal Circuits that any party has cited is a case from the Second Circuit called Dorff, where there was, in fact, a distinction between their Second Circuit law and Federal Circuit law. And the Second Circuit applied Federal Circuit law, because even though there was a difference between Federal Circuit law and Second Circuit law, because if the Federal Circuit wouldn't take the case, then it made no sense to send it over there, and conversely. Well, so where would that leave Boeing then if we determined that Ninth Circuit law said that it's a compulsory counterclaim that belongs in the Federal Circuit and we didn't transfer it? Where would that leave Boeing? Well, I think the court would look at both Federal Circuit and Ninth Circuit law. Well, but I'm asking you the specific scenario. Right. If we determined that it is a compulsory counterclaim, but we didn't transfer it to the Federal Circuit, what would Boeing's options be at that point? Well, if the court determined that it was compulsory under both Federal Circuit and Ninth Circuit – Under either. Well, then it should transfer, Your Honor. But the question that's posed, Boeing says that the court should apply only Ninth Circuit law and cites a number of cases supporting that position. And we just think that the cases are miscited, misstated. So, for example, the ICQ case that they cite where they say this court has determined that a certain issue doesn't implicate the jurisdiction of the Federal Circuit, if the court traces back, it's citing Amity, which is another Ninth Circuit case. We understand that argument. You're saying that it shouldn't under Ninth Circuit law, but we were asking a different question about if we ruled differently from what you're arguing. I understand, Your Honor. Obviously, if the court determined it were compulsory, then it should transfer. All right. Unless the court has more questions. It appears not. Thank you, Your Honor. Let's have two minutes for rebuttal. Thank you, Your Honor. Just a technical point first, but I think it's important in response to some questions from Judge Koh earlier. What Your Honor asked Judge Koh was correct about the First Amendment complaint, but the plaintiffs filed a Second Amendment complaint after the interrogatory responses at which point we knew exactly what those complaint allegations were alleging. We filed a counterclaim to that. Those are the operations. But that was a different patent, right? That was a thin-hull patent. The first patent was the active voltage control patent in the First Amendment. It was about both patents. But that's less important for me. I want to ask you, you make an argument that in your briefs that the test of the Federal Circuit, that the question of the extent of overlap between what the plaintiff must establish to prove its claim and what the defendant must establish to prove its counterclaim is dicta in NASILOC, and that's based on Judge Newman's concurrence. Is that still your position? You want us to ignore what the majority published in that decision, Judge Kohars and Judge Dyke? Forgive me, Your Honor. Our principal argument is not that. Our principal argument is that my friends on the other side are misreading the import of that sentence. What that sentence is saying is that to decide whether a counterclaim is compulsory, one looks at what would the plaintiff have to establish in order to establish the plaintiff's claim, and then what would the defendant have to establish in order to establish the defendant's claim, and how much factual overlap is there between the two. Now, in that case, there was none. It was a trademark infringement claim. Okay, sorry, since my time is limited. I think, Judge, you said two minutes? As long as you have questions, we're fine. Okay, I just want to make sure you're not arguing still that that's dicta and that that's not law of the Federal Circuit. That was really just my question. So all we did was point out that that was Judge Newman's view. I think the most important point is that they're, I think, grossly over-reading that decision. You know, I point that my friends on the other side brought up Reardon. Reardon specifically says in the Federal Circuit that compulsory counterclaim law should be read liberally to advance the pro-efficiency objectives of it. Okay, let me ask you another question. I'm sorry because I want to observe our presiding judge's time limit. Is it possible to activate a dormant legal right but not on the basis of the aggregate core of facts? It might be theoretically possible to do so, but here the aggregate core of facts are the same with respect to inventorship. And I think one helpful place to look for that is the district court's ruling rejecting the second remand motion, which is docket entry 114. And if the court would permit me, I'll just read a couple of sentences because I think it answers it pretty definitively. Briefly, counsel. The district court said Zunim's allegations and discovery responses make clear that it would prove misappropriation, at least in part, by challenging the inventorship of any patents filed by Boeing units that derive from the unique hybrid electric architecture of the Zunim aircraft. That was the holding of the district court in rejecting the remand motion. And the language there is important. The word derive actually comes from the interrogatory response, and derivation is a— I understand. I'm sorry. Can I just ask one last question? Of course. Okay. So in patent litigation district court, inventorship doesn't really come up that often, right? And the invalidity claims is usually, you know, lack of disclosure, novelty, obviousness, other bases. So it does seem a little bit strange that reis judicata would apply on inventorship if it hadn't been reis, just because, you know, inventorship is so rarely litigated in the district courts. I don't— You know, if anything, you go to PTAB and do an interference proceeding. So I'm a little bit having difficulty with the reis judicata because it is true. So you would have had a presumption of validity if you hadn't brought the counterclaim. And to say that you'd be precluded forever from litigating the inventorship of your own patent seems a little bit hard. I'm going to try to make a few points in responding to that question, if I could. First, the district court specifically found that their misappropriation claim challenged inventorship, our inventorship. And had they prevailed on it, there would have been a factual finding that they were the inventor and we weren't. This is a two sides of the same coin issue with respect to inventorship. It absolutely is. Either they invented it and we misappropriated it and patented it, or we invented it separately and patented it. Those are two sides of the same coin. They didn't bring an invalidity claim, though, in district court. They made a misappropriation claim based on that exact allegation, that they invented it and not us. And so I think we would have been at very great, maybe we could have made an argument along the lines your Honor is saying, had we not raised this counterclaim, but we would have been at very grave risk of them saying later, that patent, you don't own that patent anymore, we do because we're the inventors under 256 and our name should be substituted in for your names and that's our patent now. We would have been at very grave risk of that because they specifically, specifically alleged that exact thing, that they invented it, not us, that we stole it and we patented it. It was a challenge to inventorship. The district court recognized it. They described it themselves in that plea that your Honor quoted earlier. It's exactly what they said in their interrogatory response. Their interrogatory response says that our patents derived from the information that they shared with us and derivation is like the classic inventorship challenge, that we invented it, we shared it with you, you derived your patents from what we shared. That's the classic inventorship challenge. It's absolutely two sides of the same coin here and that is why we would definitely have been at significant risk that we not brought this as a compulsory counterclaim at the time we did. We definitely would have. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. We are adjourned. Thank you. All rise.
judges: RAWLINSON, BADE, KOH